IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 9, 2004

**STATE OF TENNESSEE v. HARRY G. STURGILL**

**Appeal from the Criminal Court for Davidson County
No. 2001-B-1260 Steve Dozier, Judge**

—————————

**No. M2003-01817-CCA-R3-CD - Filed July 30, 2004**

—————————

The appellant, Harry G. Sturgill, was convicted by a jury of eight counts of rape of a child and two counts of statutory rape. As a result, he received a twenty-five year sentence for each of his eight child rape convictions and a two-year sentence for each of his statutory rape convictions. Two of the child rape convictions were ordered to be served consecutively. All of the other sentences were ordered to be served concurrently, for an effective fifty-year sentence. In this direct appeal, the appellant challenges the sufficiency of the evidence in regard to his child rape convictions and the length and consecutive nature of the sentences. For the following reasons, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Emma Rae Tennent, Assistant Public Defender, on appeal, and J. Michael Engle, Assistant Public Defender, at trial, for the appellant, Harry G. Sturgill.

Paul G. Summers, Attorney General & Reporter; Elizabeth Ryan, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Jon Seaborg, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

In July of 1992, the victim, C.D.,[1] moved with his mother and sister to 2213 Bransford Avenue in the Vine Hill section of Nashville. C.D. was born October 29, 1983. Three years later, when C.D. was twelve years old, R.F. and his mother moved to a house just up the street from C.D. at 2140 Bransford Avenue. R.F. was almost exactly two years older than C.D. He was born November 15, 1981. The two boys met each other at the nearby flea market and became fast friends. They spent their days playing, riding bikes, and walking to One Hundred Oaks Mall together.

While R.F. and his mother were living on Bransford Avenue, the appellant moved in with them for a short time. It is not clear exactly when, or how long, the appellant lived there, but he was nearly 40 years old at the time. C.D. remembers meeting the appellant one day at R.F.'s house "before [his] . . sister's baby was born . . . because . . . my sister was pregnant with my niece at the time." C.D.'s niece was born July 2, 1996, several months prior to C.D.'s thirteenth birthday.

The appellant was "nice" to both R.F. and C.D. and would "do stuff for them." At the time he met the boys, C.D. remembered that the appellant was working at a Mapco Convenience Store on Murfreesboro Road. He took the boys to the store one time and gave each of them a Dale Earnhardt, Jr. hat. When C.D. met the appellant, he had a red truck "shaped like a box in the back" that "had a bed back there and a window." R.F. remembers the appellant having a cream colored car prior to the red truck. A search of vehicle registration information indicated that the appellant owned a cream colored car in 1995, but did not reveal any information regarding a red truck.

One day while at R.F.'s house, the appellant "sucked" C.D.'s penis in R.F.'s bedroom. C.D. remembers this happening prior to the birth of his niece. C.D. remembered four instances of sexual activity occurring at R.F.'s house. The second time, the appellant took a shower after coming in from work and then performed oral sex on C.D. R.F. was present in the room. The third time, the appellant performed anal sex on C.D. while R.F. was present. The fourth time, while C.D. was staying the night with R.F., the appellant performed anal sex on C.D. while he was sleeping on the couch.

Sometime thereafter, the appellant moved out of R.F.'s house into a garage on Grandview Avenue. Once he moved, the appellant often took the boys in his red truck to fish, swim, or ride bikes at nearby Anderson Recreation Area at Percy Priest Lake or Mill Creek, located off Thompson Lane. One time at Mill Creek, the appellant performed oral sex on C.D. while R.F. acted as a lookout. On a second occasion, the appellant performed oral sex on C.D. in the bushes. The appellant's truck got stuck on the side of the road on one occasion at Mill Creek and while attempting to free the truck, the appellant scraped the road with the trailer hitch on his truck. At

---

[1]It is the policy of this Court to refer to victims of child sexual abuse by their initials.

Anderson Recreation Area near Percy Priest Lake, C.D. remembered receiving oral sex from the appellant and performing oral sex on the appellant "about four" times. On two of these occasions, R.F. was present. C.D. described one incident in which he threw the appellant's keys into the lake after a disagreement. They were able to leave only after the appellant hot wired his truck. Another time at Percy Priest Lake, C.D. and the appellant got into an argument. C.D. told the appellant that he was "gonna walk home . . . he [the appellant] wanted to do - - uh- have sex and I told him no." C.D. tried to call his mother and eventually ended up riding his bike home. Several times, C.D. claimed that he rode his bike over to the appellant's garage on Grandview. Once there, C.D. claimed that he and the appellant engaged in oral and anal sex.

Several years later, after the birth of his niece, C.D. was placed in Hermitage Hall, a sexual treatment facility for juveniles. He ran away from Hermitage Hall two times in 2000. The first time he ran away, C.D. found the appellant. While on the run, the appellant and C.D. engaged in both oral and anal sex. C.D. was eventually caught and returned to Hermitage Hall, where he began to see a therapist. During one of the sessions with his therapist, C.D. told about the sexual activities that had occurred between him and the appellant over a period of more than four years.

Detective David Zoccola of the Nashville Metro Police Department was assigned to investigate C.D.'s claims. On October 27, 2000, Detective Zoccola interviewed the appellant in a car outside of One Hundred Oaks Mall, where the appellant worked as a maintenance man. The appellant was informed that the interview was voluntary and that it would be taped. He agreed to speak voluntarily with Detective Zoccola. The appellant initially denied that he had any sexual contact with C.D. Later in the interview, however, the appellant admitted that he did "recall sometimes when there was sexual activity between myself and . . . [C.D.]."

Detective Zoccola then interviewed both C.D. and R.F. After hearing both of their stories, Detective Zoccola conducted a second interview of the appellant at the police station. The appellant waived his Miranda rights and acceded to the interview. The second interview was also taped. During the second interview, the appellant admitted that the allegations made by C.D. and R.F. were truthful. He was able to confirm various details regarding the relationship between himself and the boys. The appellant recalled some "twenty times" that he had sex with C.D. at multiple locations including R.F.'s house on Bransford Avenue, Percy Priest Lake, Mill Creek, and the garage on Grandview Avenue. The appellant acknowledged that he did not know how old the boys were when the sexual activity started, but admitted that they could have been as young as ten or twelve years old. He described their relationship as "a fifty/fifty deal" that arose when he "was looking for company and stuff." He stated that "the sex part to me just happened."

The appellant was indicted by the Davidson County Grand Jury on eighteen counts, including four counts of aggravated rape, ten counts of rape of a child, two counts of aggravated sexual battery, and two counts of statutory rape. Prior to trial, the State dismissed the four counts of aggravated rape and two counts of aggravated sexual battery.

-3-

At trial, C.D. and R.F. testified in exhaustive detail regarding the incidents in question. C.D. thought that the abuse began prior to the birth of his niece on July 2, 1996, but could not state the specific year in which the abuse occurred. R.F. also thought that the abuse took place prior to the birth of C.D.'s niece. C.D.'s mother also remembered the appellant taking the boys to various places prior to the birth of her granddaughter.

After hearing the proof, the jury convicted the appellant of eight counts of rape of a child and two counts of statutory rape. The jury returned a not guilty verdict on two counts of rape of a child, both of which involved incidents that allegedly occurred at the appellant's garage residence on Grandview Avenue.

Prior to sentencing, the State filed a statement of enhancement factors and a motion for consecutive sentencing. At the sentencing hearing, the trial court imposed a twenty-five-year sentence on each of the eight child rape convictions and a two-year sentence on each of the statutory rape convictions. The trial court further ordered that two of the child rape convictions be served consecutively. All other sentences were ordered to be served concurrently for an effective sentence of fifty years.

After the denial of a motion for new trial, the appellant filed a timely notice of appeal. On appeal, he challenges the sufficiency of the evidence in regard to the child rape convictions and his sentence.

Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

In the case herein, the appellant was charged with ten counts of rape of a child and two counts of statutory rape. The jury convicted the appellant of eight counts of rape of a child and two counts of statutory rape. On appeal, the appellant only challenges his convictions for rape of a child. Specifically, he argues that the "crucial issue in this case is not whether the State was able to prove beyond a reasonable doubt that defendant and . . . C.D. engaged in sexual penetration," but rather that the evidence was insufficient to prove that the victim was under thirteen years of age at the time of the offenses. The State counters that "sufficient evidence exists to show that all eight counts related to events which occurred before October 29, 1996."

Rape of a child is "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7).

The appellant does not deny that unlawful sexual penetration occurred; the only issue the appellant presents in regard to the sufficiency of the evidence is whether the evidence was sufficient to show that C.D. was less than thirteen (13) years of age when the sexual penetration occurred. The indictment charged the appellant with ten counts of rape of a child occurring between January 1, 1995 and October 29, 1996. While none of the witnesses were able to pinpoint a specific date on which any of the offenses occurred, the witnesses were able to testify about when the offenses occurred in relation to several meaningful events in their lives.

The first four counts related to abuse that occurred at R.F.'s home on Bransford Avenue. C.D. testified that he met the appellant "before my sister's baby was born . . . because my sister was pregnant with my niece at the time" and that when he met the appellant, he was working at the Mapco Convenience Store on Murfreesboro Road and living with R.F. and his mother on Bransford Avenue. The victim's niece was born on July 2, 1996, and testimony regarding the appellant's work history revealed that he worked at the Mapco during the summer of 1996. Likewise, the testimony of R.F. indicated that the appellant was working at the Mapco on Murfreesboro Road when the abuse began and that the abuse began in 1996, the same year they moved to Bransford Avenue. The testimony of the victim's mother indicates that she remembers the appellant taking C.D. and R.F. various places before her granddaughter was born. While some of the testimony of C.D. was inconsistent in that he could not say with certainty on cross-examination "what year, what the date was, that any of these events occurred," he was able to say with certainty that the offenses that took place at R.F.'s home occurred prior to the birth of his niece. R.F.'s testimony also contained some inconsistencies in that he testified that the abuse began in 1996, when he and his mother moved to the house on Bransford Avenue, but the evidence showed that the lease for the Bransford Avenue residence was signed by his mother on July 1, 1995. The testimony of R.F. and his mother did not clearly establish when the appellant moved in or lived with them.

Counts five and six related to the offenses that occurred at Anderson Recreational Area at Percy Priest Lake. The victim testified that he thought these events happened in a different summer

from the events that occurred at Mill Creek. Specifically, he testified that the events at Percy Priest Lake occurred the first summer that he knew the appellant. Both C.D. and R.F. testified that the abuse at Percy Priest Lake occurred prior to the birth of C.D.'s niece. C.D.'s mother remembered one day prior to the birth of her granddaughter that C.D. had tried to reach her by phone. C.D. testified that he tried to call his mother one day from Percy Priest Lake after he and the appellant got into an argument.

The final two counts, seven and eight, related to the abuse at Mill Creek. The victim identified two separate incidents that occurred at Mill Creek and testified that these events occurred in the summer following the abuse that took place at R.F.'s home. He was sure that the events at Mill Creek did not occur during the spring, fall, or winter. When asked if the events at Mill Creek occurred "the same summer that your niece was born," C.D. responded affirmatively. C.D. testified on cross-examination, however, that the Mill Creek episodes occurred after the birth of his niece. Thus, it appears that C.D.'s testimony was somewhat inconsistent with regard to the actual dates of the abuse at Mill Creek. Nevertheless, Richard Foster repeatedly testified that all incidents of sexual abuse occurred before the birth of his niece, who was born in July 1996.

It is not the duty of this Court to question the credibility of witnesses on appeal, that function being within the duty of the trier of fact. See generally, State v. Adkins, 786 S.W.2d 642, 646 (Tenn. 1990); State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). The question of witness credibility in the case herein was decided by the jury upon rendering a verdict of guilt on eight counts of rape of a child. The jury found the appellant not guilty on the charges of rape of a child stemming from abuse that allegedly took place at the appellant's Grandview garage residence. Hence, the jury must have felt that the proof was not adequate to substantiate those charges. After reviewing the evidence, including the testimony of Richard Fowler, we conclude that while certainly not without inconsistencies, there was sufficient proof for a rational trier of fact to conclude that the sexual penetration at issue occurred prior to C.D.'s thirteenth birthday, on October 29, 1996.

<u>Sentencing</u>

In the case herein, the appellant challenges the trial court's application of enhancement factors and the refusal of the trial court to apply mitigating factors as well as the imposition of consecutive sentencing. The State argues that the trial court properly sentenced the appellant to an effective sentence of fifty years.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing

principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

Turning more specifically to the facts of this case, the appellant was found guilty of eight counts of rape of a child and two counts of statutory rape. Rape of a child is a Class A felony, and the appellant is a Range I Standard Offender, so the range of punishment is "not less than fifteen (15) nor more than twenty-five (25) years." Tenn. Code Ann. § 40-35-112(a)(1). Statutory rape is a Class E felony, so the range of punishment is "not less than one (1) nor more than two (2) years." Tenn. Code Ann. § 40-35-112(a)(5). Furthermore, the presumptive sentence for the rape of a child convictions would be the midpoint of the range if there are no enhancing and mitigating factors present, and the presumptive sentence on the statutory rape convictions would be the minimum sentence in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c).

## A. Enhancement and Mitigating Factors

In the case herein, the State filed a notice of enhancement factors to be considered by the trial court. The State argued that the following enhancement factors should apply: (1) the offense involved more than one (1) victim, Tenn. Code Ann. § 40-35-114(4);[2] (2) a victim of the offense was particularly vulnerable because of age or physical or mental disability, Tenn. Code Ann. § 40-35-114(5); (3) the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement, Tenn. Code Ann. § 40-35-114(8); and (4) the defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or fulfillment of the offense, Tenn. Code Ann. § 40-35-114(16).

In imposing the appellant's sentence, the trial court found the existence of several statutory enhancement factors, including: (1) the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, Tenn. Code Ann.

---

[2] A 2002 amendment to Tennessee Code Annotated section 40-35-114 added a new subsection one (1) and renumbered the existing enhancement factors two (2) through twenty-three (23). Both the appellant's brief and the State's brief utilize the numbers that correspond to the enhancement factors at the time of the commission of the offense, which was prior to the amendment of the statute. For clarity however, we will refer to the enhancement factors as they existed at the time of the appellant's trial and as reflected in the 2002 amendment.

40-35-114(2); (2) the offense involved more than one victim, Tenn. Code Ann. § 40-35-114(4); (3) the victim was particularly vulnerable because of age or physical or mental disability, Tenn. Code Ann. § 40-35-114(5); and (4) the defendant abused a position of private trust, Tenn. Code Ann. § 40-35-114(16). The appellant does not challenge the trial court's application of the first two enhancement factors. However, the appellant argues that the trial court erred by finding that the victim was particularly vulnerable and that the appellant abused a position of private trust.

A victim is "particularly vulnerable" when there is a showing that the victim was somehow, "incapable of resisting, summoning help or testifying against the perpetrator." State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). Further, the determination of whether a victim was particularly vulnerable for purposes of sentencing is a factual issue to be determined by the trial court on a case by case basis. State v. Lewis, 44 S.W.3d 501, 505 (Tenn. 2001). The evidence at trial showed that C.D. was less than thirteen years of age at the time of the abuse. In addition, the evidence showed that C.D. was in special education classes and had been assessed as borderline mentally retarded with an intelligence quotient of 75. The trial court also commented that even at the time of trial, when C.D. was several years older, C.D. was "extremely slow, in terms of his capacity to understand questions and process that and give responses." Furthermore, the victim indicated that he stayed silent about the abuse because the appellant told him that he would hurt him if he told anyone. We conclude that the evidence supports the trial court's application of enhancement factor five (5).

The appellant also challenges the trial court's application of enhancement factor sixteen (16), that the appellant abused a position of private trust. Tenn. Code Ann. § 40-35-114(16). In order to determine the application of the private trust factor, the court must look to "the nature of the relationship," and whether that relationship "promoted confidence, reliability, or faith." State v. Kissinger, 922 S.W.2d 482,488 (Tenn. 1996).

> A relationship which promotes confidence, reliability, or faith, usually includes a degree of vulnerability. It is the exploitation of this vulnerability to achieve criminal purposes which is deemed more blameworthy and thus justifies application of the enhancement factor. Accordingly, factor (15) [now factor sixteen (16)] is construed to apply only where there is evidence that the nature of the relationship between the perpetrator and the adult victim caused the victim to be particularly vulnerable. If such a relationship or "private trust" is shown, the State must then prove that the perpetrator abused that relationship in committing the crime. As with all determinations regarding the application of an enhancement factor, the utilization of this analysis "is a task that must be undertaken on a case-by-case basis." Poole, 945 S.W.2d at 96.

State v. Gutierrez, 5 S.W.3d 641, 646 (Tenn.1999).

In the case herein, the trial court determined that the enhancement factor applied "based on the testimony of the victim . . . and the testimony from his mother about using this young boy - at the time - as he did." The appellant described his relationship with C.D. and R.F. as "a father/son

kind of love" that "just lead [sic] to other things." When asked by Detective Zoccola in the second interview, the appellant admitted that he had "taken advantage" of C.D. The appellant even told the Detective that R.F. called him "Dad" at times. Further, the appellant knew that C.D. was mentally challenged. We conclude that the evidence supports the trial court's application of this enhancement factor.

The appellant also complains that the trial court erred by failing to consider two mitigating factors: (1) that the defendant's criminal conduct neither caused nor threatened serious bodily injury, Tenn. Code Ann. § 40-35-113(1); and (2) that the defendant assisted the authorities in locating or recovering any property or person involved in the crime, Tenn. Code Ann. § 40-35-113(10). Specifically, the appellant claims that there "was no proof in the record that any of the offenses caused bodily injury to the victim, and there was further no proof that the defendant threatened to cause serious bodily injury." Further, the appellant argues that he "made two voluntary statements to Detective Zoccola" and gave the authorities information on where to find R.F. which assisted the police in their investigation.

The record contradicts the appellant's assertions. The victim testified that he did not tell anyone about the abuse because he was afraid the appellant would "hurt" him. The trial court properly refused to apply this mitigating factor. Further, the record supports the trial court's refusal to apply mitigating factor ten (10). The appellant did not take responsibility for his actions or try to mitigate the damage he had done to C.D. and R.F. The instances of abuse spanned several years yet the appellant did nothing to curtail his behavior. He seemed incredulous when first interviewed by Detective Zoccola, even commenting that he "didn't expect that this was going to get reported." After being confronted with the boys' accusations, the appellant denied his involvement "three or four times" before finally admitting to sexually abusing C.D. and R.F. Even then, he took no responsibility for his conduct. He blamed his divorce, alcohol, and even the victim for his crimes. Even at the sentencing hearing the appellant still did not think he had "anything to do with" the emotional damage that was done to C.D. The appellant clearly did not show remorse for his actions and only aided in the investigation by providing the police with a location where they might find R.F. The record supports the trial court's refusal to apply mitigating factor ten (10). See State v. Williamson, 919 S.W.2d 69 (Tenn. Crim. App. 1995) (upholding trial court's failure to apply mitigating factor where proof showed that defendant had no remorse for actions).

## B.  Consecutive Sentencing

Finally, the appellant challenges the fact that the trial court ordered that two of his ten sentences run consecutive to one another. The State argues that the imposition of consecutive sentencing was appropriate in this case.

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds,

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
(2) The defendant is an offender whose record of criminal activity is extensive;
(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist . . . ;
(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
(6) The defendant is sentenced for an offense committed while on probation; or
(7) The defendant is sentenced for criminal contempt.

Id. Furthermore, consecutive sentencing is subject to the general sentencing principles providing that the length of a sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." Tenn. Code Ann. §§ 40-35-102(1), -103(2); see State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002).

The trial court's findings in support of consecutive sentencing appear in the record as follows:

In terms of being concurrent or consecutive, and Mr. Sturgill, I believe, does qualify that, under those factors, he does have a record that was, in the Court's opinion, extensive, which includes now a theft conviction and convictions going back to nineteen-seventy-six, 'seventy-seven, 'eighty-eight, 'ninety-five, and now these. And also these do involve offenses with sexual abuse perpetrated on minor victims. In looking at that factor, the courts requires this Court - - and the statute does - - to consider the time span over which these acts occurred and the nature and the scope of the acts.

To that regard, obviously, there are multiple times, more so than just eight counts of this Indict - - or twelve counts of this Indictment; there were multiple other events that . . . [the victim] testified to occurring over a several-month period of time in nineteen-ninety-five or more likely 'ninety-six.

And what's more troubling is the time frame, if that wasn't enough, is the nature and scope, which consisted of anal and oral sex perpetrated on . . . [the victim] and Mr. Sturgill seeking and allowing . . . [the victim] to do various things to him.

So, based on all that, the Court's gonna run con - - Counts One and Three, which is the oral sex and the anal sex, consecutive with each other, the other counts concurrent, for an effective fifty-year sentence at a hundred percent.

From the record, it is implicit that the trial court founded the consecutive sentences on the criteria listed at Tennessee Code Annotated section 40-35-115(b)(5). The appellant was convicted of eight statutory offenses involving rape of a child and two offenses of statutory rape. The crimes arose from a relationship that the appellant characterized as that of "father/son." The abuse suffered by the victim lasted for several years and the victim was not only subjected to, but was required to perform, various sexual acts by the appellant. The victim ultimately spent time in a sexual treatment facility for juveniles. The trial court's concerns prompting the discretionary imposition of consecutive sentencing appear well founded, and we are of the opinion that the record supports the trial court's sentencing decision. See, e.g., State v. Lane, 3 S.W.3d 456, 459-60 (Tenn. 1999) (consecutive sentencing upheld for a defendant who committed multiple offenses involving sexual abuse of a minor victim); State v. Anderson, 880 S.W.2d 720 (Tenn. Crim. App. 1994) (determining that consecutive sentences were appropriate for defendant convicted of six counts of aggravated rape of an eight-year-old victim where evidence existed of sexual abuse extending over a significant period of time and the victim would suffer residual effects of the abuse). The appellant has not persuaded us, as is his burden, that these sentences are inappropriate. See Ashby, 823 S.W.2d at 169. We conclude that the trial court properly ordered the appellant to serve two of his sentences for rape of a child consecutively.

## Conclusion

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE

-11-